UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| INFOW, LLC, *et al.*, | ) Case No. 22 - 60020 |
| | ) |
| Debtors.[1] | ) Chapter 11 (Subchapter V) |
| | ) |
| | ) Jointly Administered |

**BENCH MEMORANDUM ON WHETHER INFOW, LLC AND PRISON
PLANET TV, LLC ARE PROPER SUBCHAPTER V DEBTORS**

InfoW, LLC ("InfoW"), IWHealth, LLC ("IW Health"), and Prison Planet TV, LLC ("Prison Planet TV" and together with InfoW and IW Health, the "Debtors"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases, submits this Bench Memorandum to allay concerns that InfoW and Prison Planet TV are not eligible to be Subchapter V Debtors (the "Memorandum"). The Debtors provide this Memorandum to assist the Court, the United States Trustee and the creditors, in an effort to bridge the gap among the parties and also to bring about confirmation within the 120 days allotted for Subchapter V cases. The Debtors hope this Memorandum will help facilitate discussion at the status conference on Friday April 29, 2022, 3:00 P.M. CST in Courtroom 401, United States Courthouse, 515 Rusk, Houston, Texas 77002.

**INTRODUCTION**

1.     At the Status Conference on April 22, 2022 (the "April 22nd Status Conference"), the Court asked W. Marc Schwartz, the proposed Chief Restructuring Officer (the "CRO" or "Schwartz") questions about the assets, liabilities and the "business" of each Debtor.

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

2. At the April 22nd Status Conference, the Court elicited facts from the CRO that neither InfoW nor Prison Planet had any employees, bank accounts, and minimal operations.

3. The Court then noted that he wanted to understand better how InfoW and Prison Planet TV could qualify as subchapter v debtors at the next status conference (the "<u>Upcoming April 29th Status Conference</u>"), and how these two debtors were "***engaged in*** business or commercial activities." (emphasis added).

4. Other parties at the April 22nd Status Conference pointed out that Mr. Schwartz had submitted a declaration in connection with the Bankruptcy Cases. According to certain Objections filed, "*Per sworn statement of their proposed chief restructuring officer, Debtors are not engaged in commercial or business activities:*

> *I have learned that the Debtor[s] have no purpose other than to hold assets which may be used by other entities. They undertake no business activities, they do not sell, rent or lease to others anything. Their assets do not generate any income for them. They have no bank accounts and do not pay money to anyone for any reason. They have no debt or other liabilities other than those related to pending or potential litigation. For these reasons, they have no financial statements or books of account and they do not file income tax returns.*

*See* Decl. of W. Marc Schwartz [ECF No. 7-3].

5. If a party-in-interest objects to the Subchapter V designation, the debtor bears the burden of proving eligibility under Subchapter V. *See In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021); *In re Offer Space, LLC*, 629 B.R. 299, 304 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. 261, 275 (Bankr. D. Col. 2021).

**INFOW, LLC AND PRISON PLANET, LLC**
**QUALIFY AS SUBCHAPTER V DEBTORS**

I. **Congressional History Establishes that the Two Debtors Were Intended To Qualify as Subchapter V Debtors**

6. The first paragraph of the legislative history to the Small Business Reorganization Act of 2019 ("SBRA") states "Small businesses-typically *family*-**owned** businesses, startups, and other *entrepreneurial ventures*- "form the backbone of the American economy" . . . [H]owever, the longevity of these businesses is limited . . . approximately 20% of small businesses survive the first year, but by the five-year mark only 50% are still in business and by the ten-year mark only one-third survive." (emphasis added). *See* Report from the Committee on the Judiciary referred to bill H.R. 3311.

7. As set out in the Corporate Chart used at the April.22nd Status Conference (Debtors' Ex. 6), the three debtors hold the intellectual property of Mr. Jones businesses through his InfoWars website, which sales transactions are processed by Free Speech Systems, LLC ("FSS"). The three debtors were, until recently, single member owned LLCs, which operated within a family-owned structure, which include Mr. Jones' father and mother and the entity PQPR Holdings.

8. The three debtors serve a critical role in Mr. Jones' entrepreneurial venture. Whether one agrees or disagrees on what he does, there can certainly be no debate that as a business it is fraught with risk and no guarantee of success. The Debtors are engaged in the business of holding the legal assets and the website necessary for the family business to operate.

9. Elizabeth Williamson, in her reporting of the Sandy Hook tragedy, writes[2]:

By 2012, Jones had launched an ingenious new business model. On every Infowars broadcast, Jones interspersed his rants with ads for bizarre diet supplements, air- and water-filtration systems, dried food, untraceable gun components-everything needed to survive

---
[2] Williamson, Elizabeth, *Sandy Hook, An American Tragedy and the Battle for Truth*, pp.58-79.

3

the end of times, available in the online Official Infowars Store. In a dark Infowars world where the feds poisoned food, water, minds, and individual freedoms, Jones sounded the warning and sold an answer . . .

   \*   \*   \*

Jones proved a gifted salesman. His father David, the dentist-entrepreneur who brought Infowars into the supplement business and took over the company's books, said in a court deposition that when Alex pushed a product online, sales spiked, moving a stream of merch out of the warehouse behind the studio.

10. As observed by one court, "Subchapter V was established to provide an expedited process for small business debtors to reorganize quickly, inexpensively, and efficiently." *In re Parking Management, Inc,* 620 B.R. 544, 551 (Bankr. D. MD 2020).

II. **This Court's Reasoning in *Port Arthur Steam Energy, L.P.* Establishes that the Two Debtors Qualify as Subchapter V Debtors**

11. Last July, this Court ruled in *Port Arthur Steam Energy, L.P.*, 629 B.R. 233 (Bankr. D. Tex. 2021), that the debtor Port Arthur Steam Energy ("PASE"), while no longer involved in business of producing and selling steam and electricity on the petition date, nevertheless was actively engaged in commercial or business activities when it was, among other things, pursuing litigation against third parties on the petition date.

12. Beginning around 2005, PASE owned and operated a waste heat facility in Port Arthur, Texas. Under a Heat Energy Agreement with Oxbow, PASE bought flue gas energy from Oxbow. PASE used the flue gas to generate steam and electricity. PASE sold the steam to Valero Port Authority Refinery and sold some electricity back to Oxbow. PASE subleased the land for its facility from Oxbow.

13. PASE and Oxbow's relationship started deteriorating around 2010–2011. In 2015, PASE obtained a multi-million-dollar judgment against Oxbow. Then, in 2018, Oxbow suspended flue gas energy delivery to PASE. As a result, PASE could not deliver steam to Valero. Valero

4

ultimately terminated its contract with PASE. After filing suit in state court, PASE filed Subchapter V with the Bankruptcy Court, Victoria Division.

14. Just like here, the United States Trustee and a creditor objected to the Subchapter V designation. In PASE, the objectors argued that PASE is not a person engaged in commercial or business activities.

15. This Court started its analysis by first finding that PASE is a limited partnership and thus satisfies the definition of "person" under Section 101(41) of the Bankruptcy Code. The three Debtors are Texas limited liability companies and, like PASE, satisfy the definition of "person".

16. The Bankruptcy Code, however, does not define "engaged in commercial or business activities," so this Court applied its plain meaning. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004); *Franco v. Mabe Trucking Co.*, 991 F.3d 616, 621 (5th Cir. 2021). The definitions of "engaged," "commercial," "business," and "activity" has remained the same over time. Engaged means "involved in activity." The Court agreed with cases holding that "engaged in" commercial or business activities means a debtor was actively participating in one of these activities on the petition date. *See, e.g.*, *In re Blue*, 630 B.R. at 188–90; *In re Offer Space, LLC*, 629 B.R. at 305; *In re Johnson*, Case No. 19-42063, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021).

17. Commercial means "of or relating to commerce" and "viewed with regard to profit." Commerce means "the exchange or buying and selling of commodities on a large-scale involving transportation from place to place." Business means "a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of

5

an economic nature." Finally, "activity" means "the quality or state of being active: behavior or actions of a particular kind."

18. According to this Court, PASE was not selling steam or electricity on the petition date. On the other hand, InfoW and Prison Private LLC never stopped conducting the original business for which they were established, holding the intellectual property and the website of Mr. Jones' family business under the label InfoWars.

19. Notwithstanding PASE not selling steam or electricity on the petition date, the Court found that "_. . it was engaged in commercial and business activities._" Set out underneath the factors the Court found in PASE as indicators of "engaging in" commercial and business activities, the Debtors have described in italics below the relevant facts for InfoW and Prison Planet.

- PASE was managed by two principals of its limited partner under a management agreement. An independent contractor also worked for PASE.
  - *Alex Jones was the initial managing member, who transferred his membership interest to an interim trustee, who had a specific duty under the Trust Agreement. The Debtors retained a Chief Restructuring Officer to manage the day-to-day affairs of the Debtors. The Debtors also retained a bankruptcy law firm to work with Third-Party Funding Contributors and the CRO.*
- PASE was litigating a multi-million-dollar lawsuit against Oxbow.
  - *The Debtor InfoW is the defendant in a series of lawsuits in Texas and Connecticut stemming from certain statements made by Alex Jones and has been litigating those claims for the last 10 years*
- PASE was pursuing collection remedies on an outstanding account receivable of about $163,000 from Oxbow.
  - *The Debtor InfoW has been the subject of finding of liability in the defamation cases and has been subject of fines, penalties which it has had to pay along with other co-defendants, and, by common law have indemnification claims to and against the other co-defendants.*
  - *Prior to the Petition Date, the Debtors InfoW and Prison Planet TV assured that the licenses of its intellectual property were properly documented.*
  - *Prior to the Petition Date, the Debtor IWHealth investigated and made demand to have*

6

> *the Youngevity receivable assigned to it.*

• PASE actively maintained its facility and vehicles. Individuals routinely worked on site to preserve the value of PASE's assets. This included running the technical parts of the facility, maintaining utilities like power and water, and making repairs after severe storms that unfortunately occur in that area.

- *Since its inception, the Debtors maintained the intellectual property for use by its affiliates so that the business of InfoWars could be conducted*

• Preceding the bankruptcy filing, PASE's managers worked on a plan to sell assets and pay creditors in chapter 11, including bundling certain assets; prepared photographs and specifications information for potential buyers; and hosted plant visits. PASE estimated the value of these assets at around $3 million.–

- *Prior to the Petition Date, the Debtors retained bankruptcy counsel and paid retainers to have the firm work on a pay in full plan for the litigation creditors of Jones, FSS and the Debtors.*
- *Prior to the Petition Date, the Debtors retained W. Marc Schwartz as a Chief Restructuring Officer.*
- *Prior to the Petition Date, counsel and CRO of the Debtors worked on retaining two former bankruptcy judges to serve as trusts.*
- *Prior to the Petition Date, the Debtors and the Third-Party Funding Contributors negotiated the Plan Support Agreement.*
- *Prior to the Petition Date, the Debtors and the Third-Party Funding Contributors negotiated the Declaration of Trust.*
- *The Debtors have filed a Plan providing for a recovery of up to $10,000,000 to the creditors of the Debtors over a 5-year period from the Effective Date of the Plan.*
- *The Debtors have selected subchapter v to save funds and to hasten the process of achieving confirmation of a plan of reorganization within 120 days.*
- *Subject to safeguards and commitments to be obtained during the Bankruptcy Cases, the immediate funding commitment is more than $3,500,000, before one order is signed and that is an indicium of good faith.*
  1. *$725,000: Cash from Exempt Assets Already Funded*
  2. *$800,000: $200,000 minimum per month (4 mos.) for CRO and Debtor's counsel*
  3. *$2,000,000: Cash commitment upon confirmation, 120 days from Petition Date*
  4. *$250,000: Per quarter for next five years from the Effective Date for a total of $5,000,000*
  5. *$35,000/month: Youngevity Receivable (~$2,000,000 over 5 years)*

• PASE sold an asset worth about $35,000 in the months before the bankruptcy filing.

- *The Debtors entered the lease at the Victoria office*
- *The Debtors contracted with a law firm and a CPA firm*

• PASE filed reports and tax returns as required by state and federal agencies.

- *The Debtors are disregarded entities for tax purposes and therefore their income and*

> *expense would be reported as part of Mr. Jones's tax returns.*

20. After analyzing the facts that qualified PASE to be a small business debtor, this Court addressed the remaining issues, some of which are also being made in the instant case:

> *Thus, actively pursuing litigation against a third party, seeking to collect on outstanding accounts receivable, selling an asset, preserving asset value and having managers oversee the company while an independent contractor maintained the PASE facility are all commercial and business activities*. Oxbow points out that *PASE did not have W-2 employees, but neither do many U.S. small businesses, and, regardless, that is not required under Section 1182(1)(A). This Section also does not require a debtor to maintain its core or historical business operations on the petition date. It requires that the debtor was engaged in commercial or business activities*. PASE satisfies this requirement. *In re Port Arthur Steam Energy, L.P.*, 629 B.R 233, 237 (Bankr. S.D. Tex. 2021).(emphasis added)

21. Under *PASE*, the Debtors submit that InfoW and Prison Planet fit squarely within the rationale and logic qualifying them as subchapter v debtors.

### III.   The Majority View of Cases Interpreting "Engaged in" Business Establishes that the Two Debtors Were Intended to Qualify as Subchapter V Debtors

22. Since the enactment of SBRA, a "majority" view has developed providing an expansive non temporal view of "engaged in" commercial or business activity. *In re Wright*, Case No. 20-01035, May 27, 2021 ECF No. 37) ("[a]lthough the brief legislative history of SBRA indicates it was intended to improve the ability of small businesses to reorganize and ultimately remain in business, <u>nothing therein, or in the language of the definition of a small business debtor, limits application to debtors currently engage in business or commercial activities</u>") (emphasis added); *Accord. see, In re Bonert*, 619 B.R. 248 (Bankr. C.D. Cal. 2020); *In re Blanchard*, Case No. 19-12440, Bankr. E.D. La., July 16, 2020, ECF No. 137).

23. The majority view argues that the statute neither qualifies "engaged in" as currently nor formerly "engaged in". *Blanchard*, p.2.

24. As the *Wright* court further explained, "The context here is a Bankruptcy Code providing relief from debt in various forms including reorganization of a business, sale of assets,

8

valuation of property, the adjustment of debt, and combinations of those and other remedies. Congress recently enacted the SBRA . . . The SBRA and Subchapter V were designed to broaden relief available to address small business debt . . . *The definition of a "small business debtor" is not restricted to a person who at the time of the filing of the petition is presently engaged in commercial or business activities and who expects to continue in those same activities under a plan of reorganization. <u>That person may have incurred $2,725,625 in noncontingent, liquidated, secured and unsecured debts that arose from business activities before the date of the filing of the case, but as of the petition date may have discontinued those business activities. There is nothing in the legislative history to suggest that in this latter instance, the small business amendments should not apply to that person.</u>"* 2 *Collier on Bankruptcy* ¶ 101.51D (16th ed. 2020). (emphasis added).

25.     Applying the definition to the facts of this case, the Debtors meet the debt requirements because 100% of their debts are business debts (debts associated with the media business for which they supply key components) and their total debt amount is less than the statutory cap. Keach and Prescott, ***Fixing Ch. 11 For Small Biz: The SBRA IS Working As Intended, Law 360****,* February 19, 2021 ("These cases, and others, indicate that the courts are interpreting the SBRA broadly and flexibly, consistent with the goal of making the tool available to small businesses and promoting restructuring of qualifying businesses whenever possible.").

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

9

Dated: April 25, 2022							Respectfully submitted,

**PARKINS LEE & RUBIO LLP**

*/s/Kyung S. Lee*
Kyung S. Lee
TX Bar No. 12128400
R.J. Shannon
TX Bar No. 24108062
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@parkinslee.com
           rshannon@parkinslee.com
Phone: 713-715-1660
Fax:    713-715-1699

*Proposed Counsel to the Debtors and Debtors-in-Possession*

# CERTIFICATE OF SERVICE

      I hereby certify that on April 25, 2022, a true and correct copy of the foregoing document was served by U.S.P.S. and, where indicated, email on the following parties:

Kaster Lynch Farrar & Ball, LLP
Attn: Mark Bankson, William Ogden
1117 Herkimer Street
Houston, TX 77008
mark@fbtrial.com
bill@fbtrial.com

Koskoff Koskoff & Bieder
Attn: Alinor C. Sterlin, Christopher Mattei, Matthew Blumenthal
350 Fairfield Avenue
Bridgeport, CT 06604
asterling@koskoff.com
cmattei@koskoff.com
mblumenthal@koskoff.com

Fertitta & Reynal LLP
Attn: F. Andino Reynal
917 Franklin St., Suite 600
Houston, TX 77002
areynal@frlaw.us

Pattis & Smith, LLC
Attn: Cameron L. Atkinson
383 Orange Street
New Haven, CT 06511
catkinson@pattisandsmith.com

Zeisler & Zeisler P.C.
Attn: Eric Henzy
10 Middle Street, 15th Floor
Bridgeport, CT 06604
ehenzy@zeislaw.com

Jordan & Ortiz, P.C.
Attn: Shelby Jordan
500 N. Shoreline Blvd. Suite 900
Corpus Christi, Texas 78401
sjordan@jhwclaw.com

Law Office of Ray Battaglia, PLLC
Attn: Ray Battaglia
66 Granburg Circle
San Antonio, TX
rbattaglialaw@outlook.com

McDowell Heterhington LLP
Attn: Avi Moshenberg, Nick Lawson, Matthew Caldwell
1001 Fannin Street, Suite 2700
Houston, TX 77002
avi.moshenberg@mhllp.com
nick.lawson@mhllp.com
matthew.caldwell@mhllp.com

The Akers Law Firm PLLC
Attn: Cordt Akers
3401 Allen Parkway, Suite 101
Houston, TX 77019
cca@akersfirm.com

Copycat Legal PLLC
Attn: Daniel DeSouza
3111 N. University Drive, Suite 301
Coral Springs, FL 33065
dan@copycatlegal.com

Richard S. Schmidt
615 Leopard, #635
Corpus Christi, TX 78401
rss@judgerss.com

Russell F. Nelms
115 Kay Lane
Westworth Village, TX 76114
rfargar@yahoo.com

Schwartz Associates
Attn: W. Marc Schwartz
712 Main Street, Ste. 1830
Houston, TX 77002
MSchwartz@schwartzassociates.us

Okin Adams LLP
Attn: Matthew Okin
1113 Vine St., Ste. 240
Houston, TX 77002
mokin@okinadams.com

| | |
|---|---|
| Office of the United States Trustee<br>Attn: Ha Minh Nguyen, Jayson Ruff<br>515 Rusk St<br>Ste 3516<br>Houston, TX 77002<br>ha.nguyen@usdoj.gov<br>jayson.b.ruff@usdoj.gov | J. Maxwell Beatty<br>The Beatty Law Firm PC<br>1127 Eldridge Pkwy, Ste. 300, #383<br>Houston, TX 77077<br>max@beattypc.com |
| Melissa Haselden<br>700 Milam, Suite 1300<br>Houston, TX 77002<br>mhaselden@haseldenfarrow.com | Walston Bowlin Callendar, PLLC<br>Attn: Cliff Walston<br>San Felipe Street, Suite 300<br>Houston, TX 77027<br>cliff@wbctrial.com |
| Cain & Skarnulis, PLLC<br>Attn: Ryan E. Chapple<br>303 Colorado St., Ste. 2850<br>Austin, TX 78701<br>rchapple@cstrial.com | |
| Byman & Associates PLLC<br>Randy W. Williams<br>7924 Broadway, Suite 104<br>Pearland, TX 77581<br>rww@bymanlaw.com | |

                                                          */s/ R. J. Shannon*
                                                          R. J. Shannon