IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 22-60020 |
| | § | |
| INFOW, LLC, *et al.*, | § | Chapter 11 (Subchapter V) |
| | § | |
| Debtors[1] | § | Jointly Administered |

### CONNECTICUT PLAINTIFFS' EMERGENCY MOTION TO DISMISS CHAPTER 11 CASES AND OBJECTION TO DEBTORS' DESIGNATION AS SUBCHAPTER V SMALL VENDORS

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**Relief is requested no later than Friday, April 29, 2022 at 3:00 p.m.**

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker (collectively, Movants or Connecticut Plaintiffs) hereby file this *Emergency Motion to Dismiss Chapter 11 Cases and*

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC fka Infowars, LLC (6916). IWHealth, LLC fka Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is P. O. Box 1819, Houston, TX 77251-1819.

EMERGENCY MOTION TO DISMISS—PAGE 1

*Objection to Debtors' Designation as Subchapter V Small Vendors* (the Motion) relating to Case No. 22-60020, *In re InfoW, LLC* (InfoW), Case No. 22-60021, *In re IWHealth, LLC* (IWH), and Case No. 22-60022, *In re Prison Planet TV, LLC* (PPT) (collectively, the Debtors and individually, the Debtor) and respectfully state as follows:

## I.  REQUEST FOR EMERGENCY CONSIDERATION

1. Emergency consideration of this Motion is sought due to the relief initially requested by the Debtors related to non-debtor insiders and the delay and expense that will be suffered given that one trial date has already been lost, and others may be in jeopardy if the Movants are not allowed to proceed to liquidate their claims by jury trial. The litigation underlying these bankruptcy filings has been going on for several years, and just as Movants were preparing their cases for trial to liquidate the amounts owed to them, these bankruptcy filings of three non-operating entities seeking relief for Jones and FSS was filed in a locale where none of the Debtors had any connection, other than by case law that allows a legal entity to claim an entire state as its domicile.

2. The consideration of the emergency relief requested by Debtors should not proceed until the issues raised herein are considered, since if either the cases do not qualify for subchapter V or they are dismissed for bad faith, consideration of the Debtors' requested relief will be mooted. Further to the point, Movants' objections to the relief requested by Debtors in large part dovetails with the arguments and evidence that support the underlying motion. If the Court does not want to consider the relief herein on an emergency basis, it should at least be considered when and if Debtors proceed with their emergency motions.

## II.   PRELIMINARY STATEMENT

3. Given the declaration attached to each of the Debtor's voluntary petitions, these three entities are not subchapter V debtors. The chief restructuring officer's declaration states unequivocally that none of the Debtors engage in business activities; maintain financial records; submit tax returns; generate income; or have any debts or liabilities other than those relating to the litigation discussed below.[2] They have no employees, limited to no assets, no cash flow, no available source of income to sustain a plan of reorganization, and no creditors other than those relating to the litigation discussed below.

4. These are not typical chapter 11 bankruptcies. They were not filed with the goal of reorganizing operating businesses through confirmation of a chapter 11 plan. These filings were initiated by Alex Jones (Jones) so that he and his wholly owned and controlled entity, Free Speech Systems, LLC (FSS), would obtain the benefit of the automatic stay without filing for bankruptcy.[3] Jones, FSS, and one of the Debtors were set to go to trial in Texas on Monday, April 25, 2022. Jones, FSS, and all three Debtors are set to go to trial in Connecticut in August. These bankruptcy cases were filed to improperly delay these trials, attempt to liquidate plaintiffs' claims in this venue instead of by juries of their peers, and provide Jones and FSS all of the protections of the bankruptcy process (including non-debtor releases when the Debtors' hand-picked trustees deem a claim is "paid in full") without having to disclose relevant financial and business documentation. They have no valid bankruptcy purpose, and they should be dismissed with prejudice as bad-faith filings so the Movants and the other Sandy Hook plaintiffs can continue with their constitutional rights to have the damages Jones inflicted upon them liquidated by a jury of their peers.

---

[2] Recognizing these issues, the Debtors filed a bench memorandum attempting to recast the statements made in the declaration. The Movants address this memorandum below.

[3] Jones, FSS, and the Debtors are collectively referred to herein as the Jones Defendants.

### III. RELEVANT BACKGROUND

5. As discussed in pleadings filed with the Court last week, the Movants are victims of Jones's intentional tortious conduct and plaintiffs in three consolidated actions currently pending in Connecticut (the Connecticut Litigation). Movants did not loan the Jones Defendants money or become the victims of a fraudulent scheme designed to take their money. Instead, they are the immediate family members of children and educators killed in the Sandy Hook Elementary School shooting on December 14, 2012, and one first responder to that shooting. They are victims of the Jones Defendants' abhorrent behavior. Liability against the Jones Defendants has been established due to litigation tactics over the last several years so bad that the courts in both Texas and Connecticut entered default judgments on liability against Jones and his entities.

6. For more than five years, Jones, through his media empire, targeted Movants and labeled the shooting deaths of their loved ones a hoax and lies. Jones and his Infowars "contributors" told an audience of millions that the Sandy Hook shooting was "a synthetic completely fake with actors," a "hologram," an "illusion" and "the fakest thing since the three-dollar bill," "staged" to take away their guns, and that the Sandy Hook families were "paid . . . totally disingenuous" "crisis actors" who faked their loved ones' deaths.

7. Jones urged the audience to "investigate," knowing his audience would respond by cyberstalking, harassing, and threatening the families.[4] These are only a few excerpts from the families' 39-page, 394-paragraph initial complaint that allege a course of conduct sounding in false

---

[4] Attached as **Ex. A** is a true and correct copy of the Wheeler Plaintiffs' Original Complaint. The citations to the quotations, in the order they appear, are: **Ex. A**, Complaint ¶ 185 (Jones on his radio show); ¶ 223 (Jones on his radio show); ¶¶ 140-41 (non-debtor defendants Wolfgang Halbig and Jones on Jones's radio show); ¶¶ 117, 273 (Jones on his channel and at a press conference), ¶¶ 138, 149, 223 (Jones on his radio show); ¶ 295 (statement by an Infowars "contributor" on Jones's radio show); ¶¶ 112, 120-21, 185, 197 (Jones on his channel and on his radio show). Identical allegations appear in the complaints in the consolidated actions brought by Sherlach and Parker.

light, negligent, and intentional infliction of emotion distress, violation of the Connecticut Unfair Trade Practices Act, and defamation.

8. The Connecticut Litigation proceeded for nearly four years, and, from the beginning, the Jones Defendants resisted the authority of the Connecticut Superior Court by every conceivable means. The case was removed twice to the United States District Court and was remanded twice. Jones was sanctioned in June 2019 for repeated violations of the court's discovery orders and threatening conduct toward plaintiffs' counsel, a sanction affirmed by the Connecticut Supreme Court in *Lafferty v. Jones*, 336 Conn. 332, 374, 377 (2020) (describing Jones' course of conduct as "a whole picture of bad faith litigation misconduct").

9. On remand, Jones continued to flaunt court orders and his discovery obligations by falsely denying the existence of certain financial records, producing fabricated financial records, and simply refusing to produce analytics data concerning revenue and content distribution. In October 2021, knowing a sanction of default was likely imminent as a result of their continued misconduct, the Jones Defendants attempted to avoid it by moving to recuse the Connecticut Superior Court judge who presided over the case since its inception. The court denied the motion, finding that the Jones Defendants had not shown any "judicial bias, partiality, or impropriety." On November 15, 2021, the Court entered a default against the Jones Defendants, finding that the sanction was necessary "given the scope and extent of the discovery material that the defendants have failed to produce."

10. And now on April 17 and 18, 2022, in yet another attempt to delay, to avoid adjudication of the claims pending in the Connecticut Litigation, and to avoid an imminent trial on similar claims brought by other Sandy Hook families in Travis County, Texas (the Texas Litigation), the three Debtors—at Jones's direction—filed for relief under chapter 11, subchapter

V, of the Bankruptcy Code. The Jones Defendants' motives are further evidenced by the removal of both the Texas Litigation and the Connecticut Litigation within hours of the bankruptcy filings. The sole basis for each removal was this bankruptcy. Moreover, although Jones and FSS are not debtors in this bankruptcy, the Jones Defendants purported to remove the state law claims against those non-debtors, effectively staying the state court cases completely.

11. These mature cases are ready for jury trial in Connecticut and Texas. Connecticut and Texas juries are the only proper arbiter of the Movants' and the Texas plaintiffs' claims, and this Court should not allow the Jones Defendants to use these bad-faith bankruptcy filings as a basis to avoid those arenas.

### IV. JURISDICTION

12. The United States Bankruptcy Court for the Southern District of Texas (the Court) has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### V. PROCEDURAL BACKGROUND

13. Debtors, Jones, and FSS are defendants in the Connecticut Litigation. Movants are David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg (collectively, the Wheeler Plaintiffs), William Sherlach (Sherlach), and Robert Parker (Parker, and together with the Wheeler Plaintiffs and Sherlach, the Connecticut Litigation Plaintiffs or Movants).

14. On May 23, 2018, the Wheeler Plaintiffs filed their Complaint in the Judicial District of Fairfield at Bridgeport, Connecticut (Wheeler Litigation).

15. On July 2, 2018, Sherlach filed his Complaint in the Judicial District of Fairfield at Bridgeport, Connecticut (Sherlach Litigation).

16. On November 15, 2018, Sherlach and Parker filed their Complaint in the Judicial District of Fairfield at Bridgeport, Connecticut (Sherlach and Parker Litigation).

17. Thereafter, on March 8, 2019, the Wheeler Litigation, Sherlach Litigation, and Sherlach and Parker Litigation were ordered to the Complex Litigation Docket of Waterbury under Case Nos. UWY-CV18-6046436S, UWY-CV18-6046437S, and UWY-CV18-6046438S, respectively, and are consolidated and referred to herein as the Connecticut Litigation.

18. On April 17, 2022, Debtor InfoW, LLC (fka InfoWars, LLC) filed a voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code. On April 18, 2022, the same day IWHealth, LLC and Prison Planet TV, LLC filed their petitions for relief under the Bankruptcy Code, the Debtors filed their Emergency Motions [Dkt. 6] and [Dkt. 7]. Debtors' chapter 11 cases are being jointly administered pursuant to the Court's Order for Joint Administration [Dkt. 8].

19. On April 18, the Debtors removed each of the three lawsuits comprising the Connecticut Litigation to the United States Bankruptcy Court for the District of Connecticut.

### VI.  RELIEF REQUESTED AND BASIS FOR RELIEF

20. Movants seek entry of an order dismissing the chapter 11 cases because the Debtors do not meet the definition of a debtor under 11 U.S.C. section 1182 and are not eligible filers, and such other and further relief as the Court deems just and equitable. In addition, pursuant to section 707(a), the Court should dismiss these cases as bad faith filings.

## VII.  ARGUMENT & AUTHORITIES

21. Federal Rule of Bankruptcy Procedure 1020(b) provides that the United States Trustee or any party in interest may object to a debtor's designation as a small business case within 30 days of the conclusion of the first meeting of creditors. And section 1112(b) provides for the dismissal of a chapter 11 case for cause if it is in the best interest of the creditors and the estate. *See* 11 U.S.C. § 1112(b). Section 1112(b)(4) sets forth a list of non-exclusive grounds constituting "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(4) ("cause" includes, but is not limited to, the enumerated factors). The Fifth Circuit has also held that a finding of lack of good faith constitutes cause for dismissal under section 1112(b). *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068, 1072 (5th Cir. 1986). The Debtors' cases should be dismissed because they filed these bankruptcies in bad faith.

### A.  *Debtors are not eligible for relief under subchapter V.*

22. The debtor bears the burden of demonstrating that it is eligible to proceed under subchapter V. *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 236 (Bankr. S.D. Tex. 2021) (recognizing "[i]f a party-in-interest objects, the debtor bears the burden of proving eligibility under Subchapter V.") (internal citations omitted). Debtors' bankruptcy filings establish they are not and never have been "engaged in commercial or business activities" as is required to be entitled to relief under subchapter v. The Small Business Reorganization Act of 2019 (SBRA) was intended to "address reorganization of small businesses." 116 Pub. L. 54, 2019, Enacted H.R. 3311, 1133 Stat. 1079. Section 1182(1) of subchapter v originally defined "debtor" as a "small business debtor," as defined under section 101(51D) of the Bankruptcy Code.

23. Effective March 27, 2020, section 1182(1) was temporarily amended to define "debtor" as follows:

> (A) subject to subparagraph (B), [debtor] means a person *engaged in commercial or business activities* (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor . . . .

11 U.SC. § 1182(1)(A); "Coronavirus Aid, Relief, and Economic Security Act," (CARES Act), Pub. L. 116-136, March 27, 2020, 134-Stat 381, § 1113(a)(3) (emphasis added). Since section 1182(1) duplicates the definition of "small business debtor" found in section 101(51D), it is relevant to look at how the term "engaged in" is used in other subsections of section 101. It is presumed that "identical words used in different parts of the same statute carry the same meaning." *See, e.g.*, *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017); *see also Tula-Rubio v. Lynch*, 787 F.3d 288, 295 (5th Cir. 2015); *Ibrahim v. C.I.R.*, 788 F.3d 834, 836-37 (8th Cir. 2015).

24. While the amount of outstanding debt has changed, both sections 101(51D) and 1182(1)(A) define "debtor" as a "person engaged in commercial or business activities." Therefore, a debtor may elect subchapter V only if they are actively carrying out "commercial or business activities" at the time of the filing of the petition. *See* 11 U.S.C. §§ 101(51D) and 1182(1)(A). Because a debtor must be "engaged in commercial or business activities" on the petition date, the Court must determine whether the Debtor has satisfied that standard. By way of their own chief restructuring officer's statements, Debtors cannot satisfy that standard.

25. As this Court has stated in analyzing subchapter V, "'engaged in' commercial or business activities means a debtor was actively participating in one of these activities on the petition date." *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 236 (Bankr. S.D. Tex. 2021).

Using Merriam-Webster Dictionary to determine the plain meaning of section 1182(1)(A), this Court has further stated:

> Commercial means "of or relating to commerce" and "viewed with regard to profit." Commerce means "the exchange or buying and selling of commodities on a large scale involving transportation from place to place." Business means "a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of an economic nature." Finally, "activity" means "the quality or state of being active: behavior or actions of a particular kind."

*In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 236. Applying the ordinary meaning of "commercial or business activities" to the language of section 101(51D), a person must be engaged in the exchange or buying and selling of economic goods or services for profit. *See id.*; *see also In re Johnson*, No. 19-42063-ELM, 2021 WL 825156, at *8 (Bankr. N.D. Tex. Mar. 1, 2021).

26. Here, Debtors admit that none of them are engaged in the exchange or buying and selling of any economic goods or services of their own for profit. Debtors' appointed Chief Restructuring Officer, W. Marc Schwartz swears that:

> [T]he Debtor[s] have no purpose other than to hold assets which may be used by other entities. They undertake no business activities, they do not sell, rent or lease to others anything. Their assets do not generate any income for them. They have no bank accounts and do not pay money to anyone for any reason. They have no debt or other liabilities other than those related to pending or potential litigation. For these reasons, they have no financial statements or books of account and they do not file income tax returns.

*See* Decl. of W. Marc Schwartz, attached to Debtors' Voluntary Pet. for Bankr. [Dkt. 1]. Thus, Debtors' own bankruptcy filings establish that they "undertake no business activities." *See id.* On the petition date, Debtors were not engaged in any ongoing commercial or business activities, do not meet the definition of a debtor set forth in 11 U.S.C. section 1182(1), and are not qualified to proceed under subchapter V of the Bankruptcy Code.

27. And Debtors' Bench Memorandum [Dkt. 31] fails to establish that Debtors engaged in business activities as opposed to being hollow shell companies. Debtors contradict their own chief restructuring officers' sworn declaration when they state they "are engaged in the business of holding the legal assets and the website necessary for the family business to operate." *See* Debtors' Bench Mem. at 3. But a search on the USPTO's Trademark Electronic Search System shows Free Speech Systems, LLC as the owner of 28 marks including, among many others, Prison Planet, Infowars, The Alex Jones Show, and Infowars Life.[5] None of the Debtors were listed as owners of any registered marks.

28. Debtors' reliance upon this Court's holding in *Port Arthur Steam Energy, L.P.* is also misplaced as the facts the Court considered in its 'engaged in business activities' analysis are distinguishable from those here:

| **Port Arthur Steam Energy** | **Debtors** |
|---|---|
| PASE was managed by two principals of its limited partner under a management agreement. An independent contractor also worked for PASE. | *Debtors, according to the declaration, conduct no business activities and filed no tax returns, so they had no employees.* |
| PASE was litigating a multi-million-dollar lawsuit to recover money for PASE. | *Debtors are not engaged in lawsuits to recover any money. The only purpose of the pending litigation is to quantify the amount of damages that they owe to the Movants and the plaintiffs in the Texas litigation.* |
| PASE was pursuing collection remedies on an outstanding account receivable of about $163,000 from Oxbow. | *Debtors have no accounts receivables, or even accounts for that matter, according to the declaration.* |

---

[5] *See* https://www.uspto.gov/trademarks/search.

**EMERGENCY MOTION TO DISMISS—PAGE 11**

| | |
|---|---|
| PASE actively maintained its facility and vehicles. Individuals routinely worked on site to preserve the value of PASE's assets. This included running the technical parts of the facility, maintaining utilities like power and water, and making repairs after severe storms that unfortunately occur in that area. | *Debtors have no facilities or vehicles. Nor do they have any individuals who worked to preserve assets.*[6] |
| Preceding the bankruptcy filing, PASE's managers worked on a plan to sell assets and pay creditors in chapter 11, including bundling certain assets; prepared photographs and specifications information for potential buyers; and hosted plant visits. PASE estimated the value of these assets at around $3 million. | *Debtors took no actions to pay creditors.* |
| PASE sold an asset worth about $35,000 in the months before the bankruptcy filing. | *Debtors had no assets to sell, instead, they are relying upon non-debtor insiders, specifically Alex Jones and Free Speech Systems, LLC to pay for their bankruptcy.* |
| PASE filed reports and tax returns as required by state and federal agencies. | *Debtors have never generated any income, paid any bills, or filed tax returns.* |

*See Port Arthur Steam Energy, L.P.,* 629 B.R. at 236-37 (italicized portions not in original). These Debtors are not engaged in business or commercial activities under this or any Court's subchapter V analysis.

**B.     Debtors' bankruptcies are bad-faith filings under Fifth Circuit precedent.**

29.     Only bankruptcy petitions filed in good faith merit the protection offered under the Bankruptcy Code. *See In re McMahan*, 481 B.R. 901, 915 (Bankr. S.D. Tex. 2012) (recognizing "inherent in *any* bankruptcy case is a fundamental prerequisite: a debtor must file his petition in good faith.") (citing *In re Elmwood*, 964 F.2d 508, 510 (5th Cir. 1992); *see also Inv. Grp., LLC v. Pottorff*, 518 B.R. 380, 382 (N.D. Tex. 2014) (recognizing "bad faith is determined based on the

---

[6] Debtors allege in their Bench Memorandum that they recently entered into a lease in Victoria, Texas, just prior to filing bankruptcy. This was done, most likely, in attempt to legitimize venue in the Southern District Bankruptcy Court.

**EMERGENCY MOTION TO DISMISS—PAGE 12**

totality of the circumstances" and that "[f]iling a bankruptcy petition in bad faith, although not explicitly enumerated in 11 U.S.C. § 1112, is an adequate basis to dismiss a bankruptcy petition") (internal citations omitted). Further, "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068, 1071 (5th Cir. 1986). The good faith requirement limits the availability of the various protections afforded by the Bankruptcy Code only to those debtors with "clean hands" and "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way." *Id*. "[A] court may consider the potential for abuse in every case, whether on motion of an interested party, or sua sponte." *In re McMahan*, 481 B.R. at 915.

30. There is no precise test for determining whether a bankruptcy petition was filed in bad faith. Instead, courts look to a non-exhaustive list of factors, including those relating to the debtor's financial condition and motives. *See Little Creek*, 779 F.2d at 1072. Factors typically considered by the Fifth Circuit include, but are not limited to: (i) whether the debtor has only one asset; (ii) whether the debtor has few employees; (iii) whether the debtor only has a few, if any, unsecured creditors whose claims are relatively small in relation to the claims of the secured creditors; (iv) whether the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and (v) whether the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. *See id*. at 1073. Outside the Fifth Circuit, courts also consider, among other things: (i) whether the debtor's pre-petition conduct has been improper; (ii) whether the petition allows the debtor to evade court orders; (iii) whether the debtor

has ongoing business or employees; (iv) whether the debtor's income is sufficient to operate or sustain a plan of reorganization; (v) whether the debtor filed solely to invoke the automatic stay; (vi) whether the debtor intends to create and organize a new business rather than reorganizing or rehabilitating an existing one; and (vii) whether the debtor is merely a shell corporation.[7]

31. When considering these factors, the Debtors' bankruptcies were filed in bad-faith and should be dismissed. Per Debtors' own filings, they have no ongoing business or employees, have limited assets, have no cash flow or sources of income other than voluntary contributions from non-debtor third parties, and have no creditors other than Movants and the plaintiffs in the Texas Litigation, making them shell companies for Jones and FSS. *See* Decl. of W. Marc Schwartz, attached to Debtors' Voluntary Pet. for Bankr. [Dkt. 1]. Debtors, along with Jones and FSS, are defendants in numerous pending lawsuits concerning the 2012 Sandy Hook shootings, which, if allowed to proceed, would resolve Debtors' financial problems, as Debtors' liability in those cases is clear and damages are the only remaining issue. Debtors then filed for bankruptcy on the eve of trial in the Texas Litigation and just months before trial in the Connecticut Litigation. *See, e.g., In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 495 (Bankr. S.D. Tex. 2013)

---

[7] *See, e.g., In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 557 (D. Del. 2002) (debtor's pre-petition conduct, ongoing business, income for operations, and intent to invoke automatic stay); *In re AdBrite Corp.*, 290 B.R. 209, 218 (Bankr. S.D.N.Y. 2003) (debtor's pre-petition conduct, ongoing business, income sufficiency for operations, and intent to invoke automatic stay); *In re DCNC N. Carolina I, LLC*, 407 B.R. 651, 662 (Bankr. E.D. Pa. 2009) *aff'd sub nom. DCNC N. Carolina I v. Wachovia Bank, N.A.*, No. CIV.A. 09-3775, 2009 WL 3856498 (E.D. Pa. Nov. 13, 2009) (same); *In re First Assured Warranty Corp.*, 383 B.R. 502, 544 (Bankr. D. Colo. 2008) (debtor's ongoing business); *Matter of Orchard Hills Baptist Church, Inc.*, 608 B.R. 309, 315 (Bankr. N.D. Ga. 2019) (debtor's evasion of court orders, ongoing business, and income); *In re EHT US1, Inc.*, 630 B.R. 41, 429-20 (Bankr. D. Del. 2012) (debtor's ongoing business, income, and intent to invoke automatic stay); *In re Lake Michigan Beach Pottawattamie Resort LLC*, 554 B.R. 899, 906 (Bankr. N.D. Ill. 2016) (debtor's income for operations and intent to invoke automatic stay); *In re Premier Golf Properties, LP*, 564 B.R. 710, 722 (Bankr. S.D. Cal. 2016) (debtor's income sufficient for reorganization); *In re Lezdey*, 332 B.R. 217, 222 (Bankr. M.D. Fla. 2005) (same); *In re Rosenblum*, 608 B.R. 529, 537 (Bankr. D. Nev. 2019) (same); *In re Harmony Holdings, LLC*, 393 B.R. 409, 418 (Bankr. D.S.C. 2008) (same); *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987) (debtor's intent to invoke automatic stay, intent to create new business, and status as shell corporation); *In re 4 C Solutions, Inc.*, 289 B.R. 354, 366 (Bankr. C.D. Ill. 2003) (debtor's ongoing business and intent to create new business); *Singer Furniture Acquisition Corp. v. SSMC, Inc. N.V.*, 254 B.R. 46, 52 (M.D. Fla. 2000) (same).

(bankruptcy filing on "eve of a [state court] foreclosure" was—much like PASE's filing in the face of Oxbow enforcing its judgment—evidence of "an intent to delay or frustrate").  Debtors, Jones, and FSS have already been defaulted in both Texas and Connecticut for repeated, willful violations of court orders and persistent bad faith litigation tactics and are ready for jury trials on damages.  This filing is simply their latest attempt to avoid those trials and frustrate the Movants' recovery.

32.     Moreover, a chapter 11 filing undertaken "in bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal." *Invs. Grp., LLC*, 518 B.R. at 384 (affirming bankruptcy court dismissal of case after it concluded that the "primary purpose" for filing the bankruptcy petition was to gain an advantage in pre-petition litigation); *see also In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 WL 4866874, at *5 (Bankr. N.D. Tex. Nov. 23, 2010) (dismissing bankruptcy of debtor whose filing was a "litigation tactic").  Jones's and FSS's use of the Debtors' bankruptcy to delay final resolution of the pending state trials necessitates dismissal by this Court under this standard.  Notably, Debtors—shell corporations with minimal assets—were the only entities to file for bankruptcy.  Jones caused the Debtors' bankruptcies to be filed in an attempt to improperly extend the protections of the automatic stay while simultaneously avoiding the disclosure requirements of section 521 of the Bankruptcy Code and the applicable Bankruptcy Rules.  Jones and FSS could have filed bankruptcy and participated the negotiation and facilitation of a consensual plan.  Instead, Jones and FSS, through Debtors, are attempting to carry out a scheme to avoid the requirements of bankruptcy while reaping its benefits.

33.     For the foregoing reasons, the facts weigh overwhelmingly in favor of a "for cause" dismissal of Debtors' bankruptcy case.  The Court should not entertain Debtors' effort to subvert

the bankruptcy process for the benefit of Jones and FSS at the expense of legitimate creditors such as Movants.

## VIII. RESERVATION OF RIGHTS

34. Movants expressly reserve the right to supplement this Motion, to introduce evidence at any hearing with respect thereto, and to file additional supplemental objections and pleadings.

## CONCLUSION

For the foregoing reasons, Movants respectfully request this Court enter an order (i) dismissing with prejudice Case No. 22-60020, *In re InfoW, LLC*, Case No. 22-60021, *In re IWHealth, LLC*, and Case No. 22-60022, *In re Prison Planet TV, LLC*, and (ii) awarding Movants any further relief the Court deems appropriate.

Respectfully submitted this 26th day of April 2022.

                                  */s/ Ryan E. Chapple*
                               Ryan E. Chapple
                               State Bar No. 24036354
                               Email: rchapple@cstrial.com
                               **CAIN & SKARNULIS PLLC**
                               303 Colorado Street, Suite 2850
                               Austin, Texas 78701
                               512-477-5000
                               512-477-5011—Facsimile

                               and

                               Randy W. Williams
                               State Bar No. 21566850
                               Email: rww@bymanlaw.com
                               **BYMAN & ASSOCIATES PLLC**
                               7924 Broadway, Suite 104
                               Pearland, Texas 77581
                               281-884-9262
                               **ATTORNEYS FOR MOVANTS**

## CERTIFICATE OF CONFERENCE

I hereby certify, as counsel for Movants, my firm has conferred with Debtors' counsel, and as of the filing of this Motion, Debtors' counsel is opposed to the relief requested herein.

*/s/ Ryan E. Chapple*
Ryan E. Chapple

## CERTIFICATE OF ACCURACY

I hereby certify that the foregoing statements are true and accurate to the best of my knowledge and belief.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Ryan E. Chapple*
Ryan E. Chapple

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Emergency Motion to Dismiss has been served on counsel for Debtors, Debtors, and all parties receiving or entitled to notice through CM/ECF on this 26th day of April 2022.

*/s/ Ryan E. Chapple*
Ryan E. Chapple
