## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| In re:<br><br>INFOW, LLC, *et al.*,<br><br>Debtors.[1] | Case No. 22 - 60020<br><br>Chapter 11 (Subchapter V)<br><br>Jointly Administered |

### DEBTORS' OMNIBUS RESPONSE TO MOTIONS TO DISMISS

InfoW, LLC ("InfoW"), IWHealth, LLC ("IWH"), and Prison Planet TV, LLC ("PTV," and together with InfoW and IWH, the "Debtors"), the debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, hereby file this response to (a) *Connecticut Plaintiffs' Emergency Motion to Dismiss Chapter 11 Cases and Objection to Designation as Subchapter V Small Business Vendors* (sic) [ECF No. 36] (the "Connecticut Plaintiffs' MTD"); (b) *The Texas Litigation Plaintiffs' Supplemental Motion to Dismiss Petition* [ECF No. 42] (the "Texas Plaintiffs' MTD"); and (c) *Motion to Dismiss Debtors' Chapter 11 Cases*, [ECF No. 50] (the "UST MTD") and together with the Connecticut  Plaintiffs' MTD and the Texas Plaintiffs' MTD, the "Motions to Dismiss"),[2] and respectfully state as follows:

### PRELIMINARY STATEMENT

1.      The Connecticut Plaintiffs' MTD and Texas Plaintiffs' MTD are moot. The Texas Plaintiffs' claims against the Debtors were released and the Texas Plaintiffs' MTD was withdrawn

---

[1] The Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number are as follows: InfoW, LLC, f/k/a Infowars, LLC (6916), IWHealth, LLC f/k/a Infowars Health, LLC (no EIN), Prison Planet TV, LLC (0005). The address for service to the Debtors is PO Box 1819, Houston, TX 77251-1819.

[2] The Debtors have made the business decision to dismiss these chapter 11 cases and have filed the *Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases* [ECF No. 110]. This Response is filed to make sure that the allegations in any of the Motions to Dismiss are not in any way construed by any party as an admission by the Debtors for any purpose and to preserve the Debtors' rights if the Court declines to enter an order approving the stipulation.

by the Stipulation and Order entered on May 19, 2022 [ECF No. 99] (the "Texas Plaintiffs' Stipulation"). The U.S. Bankruptcy Court for the District of Connecticut entered an order dismissing the Connecticut Plaintiffs claims against the Debtors with prejudice on May 26, 2022, as reflected in the Order attached hereto as Exhibit A (the "Connecticut Plaintiffs' Dismissal Order"). The Connecticut and Texas Plaintiffs are no longer creditors in or affected by these chapter 11 cases.

2.     The U.S. Trustee still seeks dismissal of the cases.[3] Although the Debtors have at least $140,000 of asserted claims against them that could be satisfied through the chapter 11 case, the ability to pay those claims and administrative expenses, and valuable assets that could be liquidated if funds were not otherwise available.[4] The Debtors' former link to Alex Jones is too great a sin in the U.S. Trustee's eyes for the Debtors to overcome—despite the U.S. Trustee's paradoxical objection to the appointment of independent management for the Debtors.[5]

3.     The U.S. Trustee's assertions in the UST MTD cannot be the *actual* reasons that the U.S. Trustee still wants these cases dismissed. The crux of the argument in the UST MTD is that the chapter 11 cases were just a litigation tactic and thus were filed in bad faith. But the litigation that the U.S. Trustee claims was the sole, bad-faith purpose of these cases is no longer affected. Despite the resolution of the litigation vis-à-vis the Debtors, however, the U.S. Trustee still seeks dismissal.

---

[3] References to the "U.S. Trustee" are to the U.S. Trustee in his official capacity and includes his agents. The Debtors adopt the style of reference used in the UST MTD (e.g., referring to the U.S. Trustee as "he") without asserting that the actions or knowledge attributed to the U.S. Trustee are the actions or knowledge of Kevin M. Epstein personally.

[4] Debtor InfoW owns the domain name "infowars.com." Although it licenses that name to Free Speech Systems, LLC ("FSS"), a condition of that license—negotiated by the Debtors' prepetition—was that $715,000 of initial funding under the PSA would be paid to satisfy the administrative expenses of these chapter 11 cases. FSS's failure to deliver the funds would be a breach of the license agreement and allow InfoW to sell or license the domain name.

[5] *See Objection of United States Trustee to Debtors' Emergency Motion for Order Authorizing Appointment of Russell F. Nelms and Richard S. Schmidt as Trustees of the 2022 Litigation Settlement Trust and Granting Related Relief* [ECF No. 18].

4.     The U.S. Trustee's other arguments in the UST MTD are similarly belied by logic or the U.S. Trustee's inconsistent actions in these cases. The chapter 11 cases put *these three Debtors* in a position to pay more to their creditors than would have been possible absent chapter 11—approximately $10.0 million, even before the proposed litigation settlement trustees (the "Proposed Trustees") were in place to give the Debtors an opportunity for further negotiations with the third-party funding contributors. But apparently the U.S. Trustee does not believe that paying creditors more than they would receive in a liquidation is a valid reorganizational purpose. The U.S. Trustee complains that the PSA and LST were negotiated by insiders but objected when the Debtors sought to put in place independent third-party fiduciaries in the form of the Proposed Trustees to enable further negotiations.[6] The U.S. Trustee argues that the lawsuits that precipitated the chapter 11 cases primarily concerned non-debtors even though the Debtors had been *defendants* in those lawsuits for four years and faced death penalty sanctions when they claimed they did not have financial information to produce in discovery. And finally, the U.S. Trustee asserts that the Debtors are attempting to abuse subchapter v of chapter 11 of the Bankruptcy Code despite not directly claiming that the Debtors fail to meet the requirements for such relief under the Bankruptcy Code.

5.     While the above dubious positions could be attributed to overzealousness, the U.S. Trustee's statements regarding the Debtors' goals in chapter 11 come perilously close to outright deception. On April 17, 2022, the Debtors provided Assistant U.S. Trustee Millie Sall a copy of their contemplated plan of reorganization, as reflected in Exhibit B hereto. The U.S. Trustee was

---

[6] As the Court is aware and the U.S. Trustee indicated, further negotiations with respect to the PSA and LST *did* occur even before the U.S. Trustee filed the UST MTD. *See Notice of Amended and Restated Declaration of Trust and Plan Support Agreement* [ECF No. 48]. The U.S. Trustee asserts that the amended and restated PSA and LST "simply attempt to obfuscate what the earlier version make clear—that the Debtors are using these cases to benefit Alex Jones and FSS, not the Sandy Hook Plaintiffs." UST MTD at p.4 n.6. The evidentiary support the U.S. Trustee has for that representation to the Court, as required by Rule 11, will unfortunately likely remain a mystery.

*aware* that the Debtors (a) were not contemplating any third-party releases, (b) did not intend to deprive the plaintiffs of their jury trial rights, and (c) the contemplated estimation would be voluntary with respect to allowance.[7] To propose that contemplated plan, however, the Debtors needed appointment and buy-in from the Proposed Trustees, as the U.S. Trustee was aware. Conveniently, the U.S. Trustee opposed the appointment of the proposed trustees even though the appointment would have resolved several of the issues raised in the UST MTD.

6.      The facts are that these chapter 11 cases were filed in good faith and would still serve a valid bankruptcy purpose. Nonetheless, the Debtors, under the management of their independent CRO, recognize that the dismissal is in the best interests of the Debtors and their estates because the U.S. Trustee continued opposition to the cases. The U.S. Trustee has decided to run up the administrative expense of these cases even though no party with a remaining pecuniary interest has a problem. That clearly does not square with the U.S. Trustees claimed role in the bankruptcy process, but that is neither here nor there.

7.      The duty of the Debtors and their professionals as estate fiduciaries is clear and unwavering. The Debtors have therefore agreed to the dismissal of the chapter 11 cases pursuant to the *Stipulation and Agreed Order Dismissing Debtors' Chapter 11 Cases* [ECF No. 110] (the "Stipulation of Dismissal"). The dismissal of the Chapter 11 Cases should be according to the Stipulation and not any of the Motions to Dismiss, which should be denied as moot or on the merits.

---

[7] It should not be a surprise that the Debtors were (prior to the dismissal of claims against them with prejudice ) and Jones and FSS still are likely to appeal any significant judgment. The contemplated plan provided that there would be no appeal or other challenge if the plaintiffs *elected* to determine their claims through an estimation-like claims allowance process. The Debtors submit that kind of voluntary give and take is indisputably appropriate.

## ARGUMENT

**A. The Motions to Dismiss Are or Will Be Moot Upon Entry of the Stipulation of Dismissal.**

8.      "A pleading is moot when a court's decision on a pending motion will be 'hypothetical or academic' or 'without any practical significance.'" *Halton v. Triplett (In re Triplett)*, Nos. 19-42570, 20-04059, 2022 Bankr. LEXIS 64, at *5 (Bankr. E.D. Tex. Jan. 10, 2022) (quoting *Scarborough-St. James Corp. v. 67500 S. Main St., Richmond, LLC (In re Scarborough-St. James Corp.)*, 554 B.R. 714, 720 (D. Del. 2016)) (internal quotation marks omitted).

9.      Each of the Motions to Dismiss are already moot or will be moot upon approval of the Stipulation of Dismissal. The Texas Plaintiffs' MTD was withdrawn pursuant to the Texas Plaintiffs' Stipulation. But if not, it would be moot because the movants are no longer creditors and have stated they want no further involvement in these chapter 11 cases. The movants with respect to the Connecticut Plaintiffs' MTD are also no longer creditors of the Debtors pursuant to the Connecticut Plaintiffs' Dismissal Order and have told this Court that they want nothing more to do with these chapter 11 cases. The UST Motion either is or will be moot pursuant to the Stipulation of Dismissal.

**B. The Debtors Filed their Bankruptcy Petitions in Good Faith.**

10.     To the extent that the Court finds that the Motions to Dismiss are not moot, they should be denied on the merits. The Debtors filed their petitions in good faith and these chapter 11 cases have a valid reorganizational purpose.

     *i.*      *Standard for dismissal for bad faith dismissal.*

11.     Bankruptcy relief requires good faith in the commencement, prosecution, and confirmation of bankruptcy proceedings. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986). The Fifth Circuit has instructed that courts should look to a debtor's financial condition,

motives, and local financial realities. *Id.* at 1072. The "traditional" bankruptcy case is where a debtor is facing financial difficulties that pose an existential threat. *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 280–81 (Bankr. N.D. Tex. 2021); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999) ("Courts . . . have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11."). "Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In re Little Creek Dev. Co.*, 779 F.2d at 1072.

12.     To amount to "bad faith" that precludes bankruptcy relief, the facts must "rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted . . . ." *In re Little Creek Dev. Co.*, 779 F.2d. at 1073; *accord In re StatePark Bldg. Grp., Ltd.*, 316 B.R. 466, 476 (Bankr. N.D. Tex. 2004) ("To find bad faith, the court must find that the facts surrounding the filing of the petition are particularly egregious."); *see also In re Greene Ave. Restoration II Corp.*, 597 B.R. 202, 217 (Bankr. E.D.N.Y. 2019) ("Dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances."); *In re MBM Ent., LLC*, 531 B.R. 363, 408 (Bankr. S.D.N.Y. 2015) "[A] bankruptcy petition should be dismissed for lack of good faith only sparingly and with great caution."). The question is not whether bankruptcy could have been avoided with the benefit of hindsight, but rather whether the Debtor's management could properly conclude that chapter 11 was an appropriate way to address existing or potential difficulties. *See In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *8 (Bankr. N.D. Tex. Jan. 26, 2005). The purpose of the analysis is to "prevent[] abuse of the bankruptcy process by debtors whose overriding motive is to delay

creditors without benefitting them in any way or to achieve reprehensible purposes." *In re Little Creek Dev. Co.*, 779 F.2d. at 1072.

       ii.   <u>The chapter 11 cases have valid reorganizational purposes.</u>

13.    The Debtors were not a financially healthy companies with no need to reorganize. Each of the plaintiffs brought and continued lawsuits against one or more of the Debtors. Those plaintiffs had obtained judgments with respect to liability. Absent restructuring, the Debtors did not have the ability to pay any significant judgment or even the already-imposed sanctions.[8] Chapter 11 relief was necessary for these three Debtors.

14.    The plaintiffs eventually decided that a jury verdict against Alex Jones and FSS was more important to them than maximizing their recovery. That is, of course, their prerogative but it is entirely irrelevant to bad faith. If creditor protestations were indicative of bad faith, virtually every chapter 11 case filed would be subject to dismissal. The Debtors did not try to prevent the plaintiffs from dismissing the cases with prejudice and indeed attempted to *expedite* the process.

15.    The U.S. Trustee's apparent problem is that Alex Jones and FSS would have also received a benefit under the Debtors' contemplated restructuring. Not for nothing, but that is why those parties were willing to pay into a trust to be distributed according to a plan (a) $725,000 initial funding plus any additional costs of the reorganization, (b) $2.0 million in cash on the effective date of a plan of reorganization, and (c) $250,000 per quarter for 60 quarters. If the bankruptcy was just to delay, the money did not need to be on the table.[9] Rather, those funds going to creditors for their claims against the Debtors was the *entire point* of these chapter 11 cases.

---

[8] Sanctions were assessed against InfoW for the failure of *FSS* to present a corporate representative who was properly prepared to testify on the designated topics.

[9] The Debtors had to *negotiate* for these funds prepetition with an eye to using the appointment of the litigation settlement trustees to get even more consideration. That appears to be a foreign concept to the U.S. Trustee.

16.     Reading between the lines, the U.S. Trustee seems to imply that it would have been preferable for the Debtors to have filed for chapter 11 without the $7.7+ million commitment from Jones and FSS. That is completely unreasonable, to put it charitably.

17.     There is no evidence that the funds that the Debtors negotiated for their former creditors was insufficient—it would have adduced in an estimation proceeding for feasibility if it existed—much less that it was so little that it amounts to a "perversion" of the bankruptcy process or egregious conduct. Courts have held under more problematic facts that the concept the Debtors proposed could potentially result in a confirmable plan of reorganization that made dismissal for bad faith appropriate. *See In re LTL Mgmt., LLC*, 637 B.R. 396, 407-09 (Bankr. D.N.J. 2022).[10]

18.     Paying joint claims of FSS and Alex Jones in a chapter 11 plan would have also served the bankruptcy purpose of maximizing the value of the Debtors' assets. The key intellectual property owned by the Debtors is the domain name "infowars.com." That domain name is most valuable while FSS is operating and Alex Jones is on the air. Additionally, the funds from Youngevity received by IWH are related to FSS's operations. While the Plaintiffs—and perhaps the U.S. Trustee—would prefer Alex Jones to not have a platform, that is irrelevant to these chapter 11 cases. Bankruptcy is about putting dollars in the pockets of creditors.

      *iii.*   *The U.S. Trustee's arguments about the PSA and LST are meritless, disingenuous, or inapposite.*

19.     The U.S. Trustee's arguments about the PSA and LST (paragraphs 37-42) were and remain baseless.  The U.S. Trustee's complaints are essentially as follows:

---

[10] In LTL, a Johnson & Johnson ("J&J") subsidiary was organized in Texas, another J&J subsidiary with tort liabilities merged into that Texas entity, the newly merged entity conducted a divisive merger in which all of the tort liabilities were put into a new non-operating entity, J&J entered into a funding agreement with the liable entity, and the entity was moved to a different district where it filed bankruptcy. The Debtors here have been defendants in the litigation for years and filed for bankruptcy in the district in which they were domiciled. Also, there are no allegations that the Debtors' actions killed anyone or caused them to develop cancer.

     a.   The PSA and LST provided that financial information of Jones and FSS relevant to the contemplated restructuring are (i) subject to confidentiality provisions by the proposed trustees and the Debtors' professionals and may be provided to other parties only with a protective order and (ii) related to estimated claims rather than actual claims;

     b.   The PSA requires an estimation procedure;

     c.   The "handwriting is on the wall" that the Debtors are going to seek extension of the automatic stay to Jones and involuntary non-consensual releases; and

     d.   The creditors did not participate in the negotiation of the PSA or LST before the Debtors filed their petitions.

The U.S. Trustee wants the Court to rule that those "facts" are evidence that the Debtors' bankruptcy cases are an attempt to "pervert" the bankruptcy process. Despite the U.S. Trustee's presumably faux outrage, they show nothing of the sort.

20.     Companies and individuals typically require confidentiality provisions before providing non-public financial information and would want a protective order before that information is shared. And even if Alex Jones and FSS were Debtors, the only financial information that would be *public* would be their schedules, statements, and monthly operating reports. Any other non-public financial could only be compelled by a Rule 2004 examination or other discovery and would almost certainly be subject to a protective order if requested. The U.S. Trustee's argument on this point has absolutely no merit.

21.     The U.S. Trustee's arguments with respect to the estimation procedures and non-consensual third-party releases gets close to being disingenuous. As reflected in Exhibit B hereto, the Debtors provided the U.S. Trustee's office a copy of the Debtor's contemplated plan of reorganization on April 17, 2022. The U.S. Trustee was or should have been aware that the estimation procedures contemplated by the Debtors were only (a) for purposes of feasibility or (b) upon election by litigation claimholders. Rather than using the information the U.S. Trustee had

available, however, the UST MTD decided to engage in flights of fancy because it better suited his position.

22.     Whether "handwriting was on the wall" as to the extension of the stay to FSS and Jones is a matter of opinion. In any event, it certainly did not happen. The Debtors sought central adjudication of the claims against them but that is hardly tantamount to an extension of the automatic stay.[11]

23.     Finally, that the Debtors did not engage the plaintiffs in the formation of the PSA or LST is inapposite. The U.S. Trustee cannot seriously contend that failure to have a prepackaged chapter 11 case is an indication of bad faith. That is especially true here where the Debtors negotiated a mechanism expressly for the purpose of further negotiations in the appointment of the Proposed Trustees. The entire point of the Proposed Trustees was to give creditors someone unquestionably neutral with whom to negotiate.

iv.     *One or more of the Debtors were defendants in each of the Sandy Hook Lawsuits and liability had already been established prior to resolution during these chapter 11 cases.*

24.     The U.S. Trustee makes noise about the fact that Sandy Hook Lawsuits "do not arise from the Debtors' conduct" but rather "from the allegedly tortious, intentional conduct of Alex Jones and FSS (through its employees) . . . ." UST MTD ¶ 44. The Debtors agree with the U.S. Trustee that the Debtors were entitled to judgment as a matter of law based on the pleadings in the Sandy Hook Litigation. But the relevant state courts—whose opinions actually matter—decided differently. These two state courts even entered judgment against the Debtors.

25.     Ironically, the U.S. Trustee's argument directly cuts against the assertion that the Debtors are not "honest but unfortunate debtors." According to the U.S. Trustee, the Debtors did

---

[11] Moreover, centralized adjudication of claims is one of the central features of the U.S. bankruptcy process.

nothing to cause liability but were still found liable. The *plaintiffs* made the decision to sue these Debtors, pursue litigation against them, and obtain judgments even though there was no basis for liability. The Debtors' use of bankruptcy to resolve those claims—by attempting to paying them in full—was appropriate. When the plaintiffs agreed to have their claims against the Debtors resolved through dismissals with prejudice, the Debtors were more than happy to oblige and worked with the plaintiffs to expedite that process.

     *v.*   <u>The Debtors qualify for subchapter v of chapter 11</u>

26.    The U.S. Trustee never asserts that the Debtors do not qualify for subchapter v. Rightly so. It is hard to imagine *how* the Debtors could have possibly incurred any liability except through engaging in business activities. They did not run up their credit cards on trips to Cabo.

27.    Instead, the U.S. Trustee takes issue with Bankruptcy Code § 1182 not including unliquidated liabilities in the calculation of maximum debt to qualify as a subchapter v debtor. The U.S. Trustee wants this Court to unabashedly and directly modify the language that Congress enacted in the Small Business Restructuring Act of 2019 because the U.S. Trustee thinks it should be different.[12] The U.S. Trustee may very well know better than Congress, but obviously that is inappropriate.

     *vi.*   <u>The chapter 11 cases were not merely a litigation tactic</u>

28.    As indicated above, the Debtors had valid reorganizational purposes that they sought to accomplish through these chapter 11 cases. The Debtors were prepared with a plan that would have provided as much as $10.0 million for the resolution and payment of claims in a way

---

[12] The U.S. Trustee asserts that "[l]ittle doubt exists that the total damage award against the Debtors, Alex Jones, FSS, and other non-debtor solvent entities of the Alex Jones Enterprise would exceed the debt limit currently in place for subchapter V." UST MTD ¶ 48. There are 21 plaintiffs and the debt limit for subchapter v is $3,024,725. The Debtors severely doubt the U.S. Trustee has a factual basis to assert that the damages of *any* of the plaintiffs exceeds $144,035.71 other than sheer speculation.

that had the potential to shortcut months of successive jury trials and years of appeals. And again, the U.S. Trustee was in possession of that contemplated plan when he filed the UST MTD.

29.     The U.S. Trustee also points to the statements of Alex Jones's personal lawyer that the goal of the bankruptcy was to force estimation.[13] But Jones has no control over the Debtors. And, if anything, it shows *why* the Debtors locked Jones and FSS in under the PSA and LST. At the end of the day, the desires of Alex Jones matter even less to the Debtors than the U.S. Trustee's desire to re-write Bankruptcy Code § 1182.

30.     The Debtors' conduct during the chapter 11 cases confirms that the point of the bankruptcy cases was to resolve the claims against the Debtors. Although the Debtors opposed the plaintiffs' dubious dismissals *without* prejudice, their position was consistently that they would gladly resolve the claims against them through dismissal *with* prejudice rather than money from Jones and FSS.[14] After the issues were resolved, the Debtors took actions to expedite the process.

**C. The Debtors Agree That Dismissal is in the Best Interests of Creditors in Light of the U.S. Trustee's Unreasonable Position.**

31.     The U.S. Trustee has made it clear that he will continue to oppose the Debtor's efforts to pay its remaining creditors through these chapter 11 cases even though there is no remaining creditor opposition.

32.     Under these circumstances, the Debtors' CRO has determined that dismissal would be in the best interests of the Debtors and their creditors. While the U.S. Trustee is free to ignore the proclaimed mission of the U.S. Trustee Program "to promote the integrity and efficiency of

---

[13] Perhaps the U.S. Trustee believes that Jones should have been willing to contribute $7.7+ million for nothing, but that is not the way the world works outside of government.

[14] The problem with dismissal *without* prejudice would have been that the plaintiffs could have arguably filed proofs of claim, thereby continuing to assert claims while removing the Debtors' ability to pay them in full. Although the statute of limitations would have run absent bankruptcy, the effect of the automatic stay and the claims bar date may have tolled the applicable limitations period.

the bankruptcy system for the benefit of all stakeholders[,]" the Debtors and their professionals are bound by their fiduciary duties. The Debtors have therefore entered into Stipulation of Dismissal, under which the Debtors seek dismissal of these chapter 11 cases.

## **CONCLUSION**

33.     Based on the foregoing, the Debtors do not oppose dismissal of these chapter 11 cases, but such dismissal not under any of the grounds set forth in the Motions to Dismiss. Instead, the Court should enter the Stipulation of Dismissal agreed to by the Debtors, the U.S. Trustee, and the Subchapter V Trustee.

[*Remainder of Page Intentionally Left Blank*]

Dated: June 2, 2022

**KYUNG S. LEE PLLC**

*/s/ Kyung S. Lee*
Kyung S. Lee
TX Bar No. 12128400
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002
Email: klee@kslpllc.com
Phone: 713-301-4751

*Proposed Counsel to the Debtors*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the forgoing document was served at the time of filing, by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties registered to receive such service.

*/s/Kyung S. Lee*
Kyung S. Lee